**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**

**ELEVEN (11) NEW UTILITY VEHICLES (MODEL: XXUTV800 – MONSTER BUGGY; MANUFACTURER: XINGYUE GROUP CO.),**

**Defendants.**

**CIVIL NO. 13-1776 (GAG)**

## OPINION AND ORDER

For the reasons alleged in the Verified Complaint for Forfeiture *in rem,* the United States seized eleven (11) new utility vehicles, Defendants in this matter, pursuant to a warrant of arrest *in rem* issued by the court. (Docket Nos. 1, 5.) Claimant and owner of the Defendants, Isabela Auto Imports, Inc. ("Isabela Auto"), moves to dismiss the complaint for the following reasons: (1) lack of *in rem* jurisdiction due to the United States's alleged failure to cause the arrest of the Defendants in a timely manner; (2) failure to comply with the "location" pleading standard of Supplemental Rule for Certain Admiralty and Maritime Claims G(2)(d) and the venue requirements; and (3) failure to comply with the heightened pleading standard of Supplemental Rule for Certain Admiralty and Maritime Claims G(2)(f). (Docket No. 17.) The United States opposed said motion. (Docket No. 19.) Isabela Auto then replied. (Docket No. 22.) After reviewing the parties' submissions and pertinent law, the court **DENIES** Isabela Auto's motion to dismiss at Docket No. 17.

**I.     Standard of Review**

      1.     Standard Governing Rule 12(b)(6)

In considering a motion to dismiss, the court accepts the facts alleged in the complaint as true and draws all reasonable inferences in favor of the plaintiff. See Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). The court must determine whether the complaint, construed in the proper light, "alleges facts sufficient to make out a cognizable claim." Carroll v. Xerox Corp., 294 F.3d 231, 241 (1st Cir. 2002). In so doing, the court accepts as true all well-pleaded facts and draws all

**Civil No. 13-1776 (GAG)**

reasonable inferences in the plaintiff's favor. Parker v. Hurley, 514 F.3d 87, 90 (1st Cir. 2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). The court may also draw from undisputed court documents generated in proceedings referenced in the complaint. See Prisma Zona Exploratoria de P.R. v. Calderón, 310 F.3d 1, 2 (1st Cir. 2002).

        2.        Standard Governing Civil Forfeiture Actions

"Proceedings in forfeiture cases are governed by the Federal Rules of Civil Procedure and the Supplemental Rules for Certain Admiralty and Maritime [C]laims". United States v. One Dairy Farm, 918 F.2d 310, 311 (1st Cir. 1990). See United States v. One Parcel of Real Prop., 942 F.2d 74, 77 (1st Cir. 1991). Thus, the Supplemental Rules for Admiralty or Maritime Claims and Asset Foreclosure Actions (hereinafter the "Supplemental Rules") impose pleading requirements on the Government in addition to the Federal Rules of Civil Procedure. Civil *in rem* forfeiture complaints are governed by Supplemental Rule E(2)(a) (which has been replaced by Supplemental Rule G(d)(f)), United States v. Pole No. 3172, Hopkinton, 852 F.2d 636, 638 (1st Cir. 1988), and must meet its particularity requirements. United States v. One Parcel of Real Prop., 921 F.2d 370, 373-74 (1st Cir. 1990); SUPP. R. FOR CERTAIN ADM. MAR. CLAIMS R. E(2)(a). In actions to which this rule is applicable the complaint shall "state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." SUPP. R. FOR CERTAIN ADM. MAR. CLAIMS R. E(2)(a); One Parcel, 921 F.2d at 374.

To establish statutory standing to contest a forfeiture action, a claimant must file a claim that complies with Supplemental Rules G(5) and G(6). U.S. v. 29 Robinson Blvd., Medway, Maine, et al., No. 10-11236, 2012 WL 3947628, at *5 (D. Mass. Sept. 7, 2012) (holding that "statutory standing is established through strict compliance with Supplemental Rules G(5) and G(6)") (citing

**Civil No. 13-1776 (GAG)**

U.S. v. Vehicle 2007 Mack 600 Dump Truck, 680 F.Supp. 2d 816, 822 (E.D. Mich. 2010)); SUPP. R. FOR CERTAIN ADM. MAR. CLAIMS R. G(5) and (6). A court may strike the claim of any claimant who fails to follow the Supplemental Rules' procedural dictates. U.S. v. All Assets Held at Bank Julius Bears & Co., Ltd., 664 F. Supp. 2d 97, 101 (D.D.C. 2009).

**II.     Relevant Factual and Procedural Background**

On March 18, 2013, the Cargo Trade Sensitive Team at the San Juan Seaport ("TST"), a task force for the United States Customs and Border Protection ("CBP"), which inspects cargo as it is imported into the United States or its territories, selected entry number BMW-00304451 for examination. (See Docket No. 6-1 at 1.) It contained all eleven (11) Defendants (make and model: Xingyue Group Co. Monster Buggy XYUTV800), imported directly from Shanghai, China, by Isabela Auto, through its owner, Jaime Serrano. Id. The inspection was conducted by CBP Officer Marie Arlene Debién with the assistance of the Chief of the Import and Certification Division of the Office of Vehicle Safety of the Department of Transportation. Id. During the investigation, it was noted that Defendants' structure and components were not of a typical off-road vehicle since they had parts and accessories that more closely resembled them to high speed passenger motor-vehicles. Id. Qualified motor-vehicles imported into the United States are regulated under federal law and must comply with Department of Transportation ("DOT") regulations. Id.

The investigation revealed that Defendants qualified as motor-vehicles and equipment regulated under federal law which required compliance with the Federal Motor Vehicle Safety Standards, 49 C.F.R. § 571 *et. seq.*, ("FMVSS"). Id. at 2.[1] In addition, a safety concern was identified in that Defendants did not comply with the FMVSS 108, 49 C.F.R. § 571.108, because their lamps did not possess the required DOT safety symbol nor the bulb marking the designation. (Docket No. 19 at 2.) Also, Defendants' parking lights emitted a bluish color which did not comply

---

[1] In the course of the investigation several features of Defendants were analyzed: (1) speed capability of Defendants, which was 90 miles per hour; (2) Defendants' operating equipment; (3) that all Defendants contained Vehicle Identification Numbers ("VIN"), which indicates on-road use; and (4) that Defendants did not warn the operator to restrict the vehicles' use to an off-road setting. (See Docket No. 6-1.)

**Civil No. 13-1776 (GAG)**

with the required amber or white colors, as set forth under FMVSS 108. (Docket No. 6-1.) Further, Defendants were required to bear certifications of compliance, to wit, a manufacturer's issued label certifying compliance with all FMVSS. (Docket No. 6-1 at 2.) Defendants did not have such a label; therefore, it was concluded that their importation was contrary to federal law and thus could be seized and forfeited under 19 U.S.C. § 1595a(c)(2)(A) and (B). (Docket No. 19 and 6-1 at 2.)

The CBP hence proceeded to seize Defendants. (Docket No. 6-1.) The United States contends that Defendants' importation violated 19 U.S.C. § 1595a(c)(2)(A), which provides that merchandise may be seized and forfeited when "its importation or entry is subject to any restriction or prohibition which is imposed by law relating to health, safety, or conservation and the merchandise is not in compliance with the applicable rule, regulation, or statute," and 19 U.S.C. § 1595a(c)(2)(B), which provides that merchandise may be seized and forfeited when "its importation or entry requires a license, permit or other authorization of an agency of the United States Government and the merchandise is not accompanied by such license, permit, or authorization." (Docket No. 6-1 at 2.) The United States further affirms that Defendants' importation was prohibited because the importer could not demonstrate that they had a certificate of compliance with all FMVSS. Id.

On June 24, 2013, the CBP Fines, Penalties, and Forfeiture Office sent all interested parties a notice of seizure via certified mail pursuant to Title 19 U.S.C. § 1595a(c)(2). (Docket No. 19 at 3.) On July 24, 2013, the CBP received the Claimant's Seized Asset Claim Form and the Election Proceedings Form, requesting that the case be referred to federal court. Id. On October 15, 2013, the United States filed a complaint for forfeiture *in rem* against Defendants and a motion for issuance of a warrant of arrest *in rem*. (Docket Nos. 1, 2.) The court issued the warrant for arrest on October 17. (Docket No. 5.) On October 30, the United States filed a motion submitting a corrected unsworn declaration replacing the unsworn declaration it filed with the complaint. (Docket No. 6.) The court noted said motion. (Docket No. 7.) On October 31, pursuant to Supplemental Rule G(3), the United States delivered service of process to Isabela Auto personally, through its owner Jamie Serrano, and his attorney Alberto J. Castañer. (Docket Nos. 9, 10.) Service

4

**Civil No. 13-1776 (GAG)**

of process was executed on November 9. (Docket Nos. 9-14.) Also, the United States posted the Notice of Civil Forfeiture on the official government website (www.forfeiture.gov) for thirty (30) consecutive days, from October 21, 2013 to November 19, 2013, pursuant to Supplemental Rule G(4)(a)(iv)(c).[2] (Docket No. 16.) On November 18, 2013, Isabela Auto, as owner of Defendants, filed a claim to intervene and claim them and their equipment. (Docket No. 15.) On November 21, the United States filed the appropriate Notice of Publication. (Docket No. 16.)

On December 6, 2013, Isabela Auto filed the Motion to Dismiss at issue alleging, in essence: (1) lack of *in rem* jurisdiction due to the United States's failure to timely execute the arrest warrant as to Defendants; (2) failure to comply with the Supplemental Rule G(2)(d) "location" and venue pleading standards; and (3) failure to comply with the Supplemental Rule G(2)(f) heightened pleading standard. The United States, in turn, challenges Isabela Auto's standing to contest the instant forfeiture action. The court addresses each argument in turn, beginning with the lack of standing argument.

**III. Discussion**

    A. <u>Standing</u>

The United States avers Isabela Auto lacks standing to contest the forfeiture of the Defendants. (See Docket No. 19 at 11-12.) Standing is a threshold consideration in all cases, including civil forfeiture cases. <u>United States v. One-Sixth Share Of James J. Bulger</u>, 326 F.3d 36, 40 (1st Cir. 2003). Standing in such cases has both constitutional and statutory aspects. <u>Id</u>. at 41. At the pleading stage, standing is not difficult to establish. <u>United States v. $8,440,190.00 in U.S.</u>

---

[2] The government should select from the following options a means of publication reasonably calculated to notify potential claimants of the action: (A) if the property is in the United States, publication in a newspaper generally circulated in the district where the action is filed, where the property was seized, or where property that was not seized is located; (B) if the property is outside the United States, publication in a newspaper generally circulated in a district where the action is filed, in a newspaper generally circulated in the country where the property is located, or in legal notices published and generally circulated in the country where the property is located; or (C) instead of (A) or (B), posting a notice on an <u>official internet government forfeiture site for at least 30 consecutive days</u>. SUPP. R. FOR CERTAIN ADM. MAR. CLAIMS R.G(4)(a)(iv)(c).

5

**Civil No. 13-1776 (GAG)**

Currency, 719 F.3d 49, 65 (1st Cir. 2013); see United States v. $133,420.00 in U.S. Currency, 672 F.3d 629, 638 (9th Cir. 2012); One–Sixth Share, 326 F.3d at 41 ("At the initial stage of intervention, the requirements for a claimant to demonstrate constitutional standing are very forgiving. In general, any colorable claim on the defendant property suffices"). "[I]t is well established that a party seeking to challenge a forfeiture of property must first demonstrate an ownership or possessory interest in the seized property in order to have standing to contest the forfeiture." Id.; see United States v. 116 Emerson St., 942 F.2d 74, 78 (1st Cir.1991) (quotation omitted). As to the federal forfeiture statutes, Supplemental Rule C(6) requires the claimant to comply with certain procedures concerning who may intervene and when they must do it. One-Sixth Share, 362 F.3d at 40-41. At the initial stage of intervention, the requirements for a claimant to demonstrate constitutional standing are very forgiving. Id. at 41.

Isabela Auto argues that it is the true and *bona fide* sole owner of the Defendants and that the United States's attachments evidence said contention. (See Docket Nos. 15, 22.) It also posits that it filed a claim which met all statutory requirements to demonstrate standing and the United States does not contend otherwise. (See Docket No. 22.) The United States conversely argues that Isabela Auto has no standing as to the Defendant property. (See Docket No. 19.) Nevertheless, it does not contest that Isabela Auto is the rightful owner of Defendants. More so, the documents that the United States made part of the record show that Defendants were endorsed and consigned to Isabela Auto, upon importation. (Docket No. 19-1.) The United States only contends that Isabela Auto lacks standing because Defendants's importation did not comply with the DOT regulations. (See Docket No. 19 at 12.) Though the United States might prove this to be true in due course, the issue of standing is separate from the merits of the claims. "Courts should not, however, conflate the constitutional standing inquiry with the merits determination that comes later." One-Sixth Share, 362 F.3d at 41; see United States v. 5 S 351 Tuthill Rd., 233 F.3d 1017, 1023–24 (7th Cir. 2000) (criticizing tests of straw ownership that deny standing rather than denying claims on their merits).

Given all the evidence here, to wit, Isabela Auto's allegation of ownership and possessory

**Civil No. 13-1776 (GAG)**

interest, as well as the documents presented by the United States, Isabela Auto sufficiently demonstrated the requisite ownership interest in Defendants to have standing to contest its forfeiture. See One–Sixth Share, 326 F.3d at 41; United States v. $81,000.00 in U.S. Currency, 189 F.3d 28, 35 (1st Cir. 1999).  At this stage in the proceedings, Isabela Auto need not prove the full merits of its claim, just that it has a colorable interest in the proceedings such that it satisfies the prudential standing requirements.  $8,440,190.00 in U.S. Currency, 719 F.3d at 60; see $81,000.00 in U.S. Currency, at 35.  Isabela Auto has done that.  See $8,440,190.00 in U.S. Currency, at 60.

      B.      Lack of *In Rem* Jurisdiction due to the United States's Failure to Promptly Execute the Warrant of Arrest

Isabela Auto contends that the warrant of arrest *in rem* was not timely executed as required by Supplemental Rule G, which requires that warrants in forfeiture *in rem* actions must be executed "as soon as practicable".  See SUPP. R. FOR CERTAIN ADM. MAR. CLAIMS R. G(3)(c)(ii). (Docket No. 17.)  It argues that the warrant of arrest was issued against Defendants on October 17, 2013, and that fifty (50) days later, it had not yet been executed despite the fact that Defendants were sitting in a government contractor's warehouse, to wit, Island Storage and Distribution, Inc. ("Island Storage"), which was adjacent to the port of San Juan, in a property readily accessible to the United States and a few meters from the CBP offices.  (Docket No. 17 at 3-4.)  It moreover posits that none of the exceptions that excuse a prompt execution of the warrant of arrest are present in this case because Defendants are not under the possession, custody, and control of the United States.  Thus, it argues that the United States had the obligation to cause the execution of the warrant of arrest "as soon as practicable" but failed to do so, with no excuse for the delay.  Therefore, the court lacks *in rem* jurisdiction over Defendants, so the complaint should be dismissed and Defendants released.

Conversely, the United States posits that it fully complied with all Supplemental Rules and that it executed the warrant of arrest *in rem* in a timely manner.  (Docket No. 19 at 5-6.)  First, that on October 31, 2013, after the court issued the warrant of arrest *in rem*, and pursuant to Supplemental Rule G(3), it sent service of process to Isabela Auto personally, through its owner Jamie Serrano, and his attorney Alberto J. Castañer.  (Docket Nos. 9, 10, 13 & 14.)  Second, that

7

**Civil No. 13-1776 (GAG)**

on November 7, 2013, the United States sent direct service of process as to the custodian of the property, the CBP. (Docket No. 12.) Third, that it posted the Notice of Civil Forfeiture on the official government website for at least thirty (30) consecutive days, as required by Supplemental Rule G(4)(a)(iv)(C). (Docket No. 16.) This is evidenced by the Notice of Publication. Id.

An examination of the record reveals that the warrant of arrest *in rem* as was executed in a timely and effective manner by the U.S. to Defendants. The United States moreover contends that, as of today, Defendants are in the United States's possession, control, and custody; therefore, the "as soon practicable" requirement is inapplicable. A warrant of arrest must be issued in every civil forfeiture case to establish *in rem* jurisdiction. Supplemental Rule G(3)(c)(ii) states that:

> The authorized person or organization must execute the warrant and any supplemental process on property in the United States as soon as practicable unless:
> (A) the property is in the government's possession, custody, or control; or
> (B) the court orders a different time when the complaint is under seal, the action is stayed before the warrant and supplemental process are executed, or the court finds other good cause.

SUPP. R. FOR CERTAIN ADM. MAR. CLAIMS R. G(3)(c)(ii). Thus, Supplemental Rule G(3)(c)(ii)(A) specifically provides that the "as soon as practicable" requirement does not apply when "the property is in the government's possession, custody, or control." See $8,440,190.00 in U.S. Currency, 719 F.3d at 55.

Isabela Auto sets forth conclusory allegations that Defendants are under Island Storage's possession, custody, and control and not under the United States's. These allegations do not hold water. The record shows that Defendants are and have always been under the possession, custody, and control of the United States. The CBP, a United States agency, seized and forfeited Defendants, which hence imputes the United States with the possession, custody, and control over them upon seizure. After importation, Defendants were seized and taken to Island Storage, by Isabela Auto's own admission, a facility known for housing items seized by the CBP. Mr. Alberto Castañer, the attorney for Isabela Auto, cognizes as much, stating: "Island Storage & Distribution, Inc. is a contractor that provides storage space and services for cargo seized by the United States CBP." (Docket No. 17-1 ¶ 5.) Thus, the United States was in possession, custody and control of

**Civil No. 13-1776 (GAG)**

Defendants via the CBP, the custodian of the property.

The court fails to understand how Isabela Auto argues that the United States does not maintain possession, custody, or control over Defendants, when it cognizes that Island Storage regularly houses items seized by the CBP. Upon seizure, Defendants were housed in a warehouse contracted by the CBP. This does not mean that by allowing Island Storage to house Defendants, the United States gave up possession, custody, or control over said property. Therefore, Isabela Auto's argument as to the failure to execute the arrest warrant in a timely fashion fails. The "as soon as practicable" requirement is inapplicable when "the property is in the government's possession, custody, or control", which Defendant property was here. Thus, the warrant of arrest was executed in a timely manner.

Nevertheless, in its reply to the United States's opposition to the dismissal of the case, Isabela Auto, further argues for the first time that the arrest warrant had to be executed on the property itself. (See Docket No. 22 at 5.) It claims that Supplemental Rule G(3)(c) does not provide for the manner as to which the warrant is actually executed. (See Id. at 4.) Hence, the United States must look to other Supplemental Rules and admiralty proceedings to determine how the property shall be arrested. Id. It avers that Supplemental Rule E(4)(a) provides that "when the arresting officer does not take actual possession of the property," he or she "shall affix a copy thereof to the property in a conspicuous place and by leaving a copy of the complaint and process with the person having possession or his agent." Id. at 11. Isabela Auto contends that the execution of the arrest warrant and the complaint had to be affixed "on the property" as required by Supplemental Rule E and not by giving notice to claimant and the CBP.[3] (See Id. at 4-5.) It insists the United States

---

[3] Isabela Auto briefly argues that the United States did not give it proper notice of the arrest of Defendants. The Supplemental Rules, which "dictate the notice required in civil-forfeiture cases," suggests otherwise. Supplemental Rule G(4) requires that the United States effect notice via publication and that the United States sent direct notice to known potential claimants. The United States properly served the complaint, notice, order, and warrant of arrest to any and all potential claimants, i.e., Isabela Auto, its owner, and his attorney. (See Docket Nos. 9, 10, 13, & 14.) Further, the United States posted a notice on the official internet government forfeiture site for at least thirty (30) consecutive days and proved it by filing the Notice of Publication. Therefore, the United States complied with Supplemental Rule G(4) and properly notified Isabela Auto of the arrest of the Defendants.

9

**Civil No. 13-1776 (GAG)**

needed to affix a copy of the arrest warrant to Defendants in a conspicuous place. Isabela Auto argues that having failed to do so, the United States did not execute the warrant of arrest as to Defendants, thus the court lacks *in rem* jurisdiction. (See Docket No. 22 at 5.)

The Rule Isabela Auto refers to is actually Supplemental Rule E(4)(b), which reads:

> (b) Tangible Property. If tangible property is to be attached or arrested, the marshal or other person or organization having the warrant shall take it into the marshal's possession for safe custody. If the character or situation of the property is such that the taking of actual possession is impracticable, the marshal or other person executing the process shall affix a copy thereof to the property in a conspicuous place and leave a copy of the complaint and process with the person having possession or the person's agent. In furtherance of the marshal's custody of any vessel the marshal is authorized to make a written request to the collector of customs and not grant the clearance to such vessel until notified by the marshal or deputy marshal or by the clerk that the vessel has been released in accordance with these rules.

SUPP. R. FOR CERTAIN ADM. MAR. CLAIMS R. E(4)(b). An examination of the Supplemental Rules reveals, however, that they clearly state that the executor of the process shall affix a copy thereof to the property <u>if the character of the property is such that its taking is impracticable</u>. <u>See id.</u> Here, Defendants are tangible property that was seized by the CBP and transported to one of its holding facilities, Island Storage. Their taking was short of impractical; thus, a copy of the warrant did not have to be affixed to the property itself. Isabela Auto offers no evidence that Defendants were not properly seized or taken by the United States The exception within Supplemental Rule E(4)(b) is inapplicable to this case because the United States took and has actual custody, control and possession of the Defendants and at no time surrendered it. The United States properly executed the arrest warrant thus the court has *in rem* jurisdiction over the Defendants.

    C.    <u>Failure to Comply with the "Location" Standard of Supplemental Rule G(2)(d)</u>

Isabela Auto avers that the complaint itself did not state the location of Defendants at the time of the seizure or its location at the time the complaint was filed. (See Docket No. 17 at 4.) It also argues that the unsworn statement attached to the complaint did not mention the location either. Isabela Auto posits that based on the pleadings, neither the court nor the parties can ascertain, where Defendants were located when they were seized. Isabela Auto notes that the unsworn statement only mentions the city of San Juan but not a specific location, thus it does not comply with the clear

**Civil No. 13-1776 (GAG)**

language of Supplemental Rule G(2)(d). (See Id. at 5.) Moreover, it argues that even if the unsworn statement complies with the location, which it denies it did, it cannot be considered a pleading. Therefore, Isabela Auto argues that the complaint failed to comply with the "location" pleading standard under Supplemental Rule G(2)(d) and venue provisions of 28 U.S.C. §§ 1355(b) & (d), and 1395(b) & (c).

The rules require the United States to disclose in the complaint the location of the property in the event of any seizure and the United States sufficiently met the "location" requirement for purposes of Supplemental Rule G(2)(d) and the venue requirements under Title 28. In a forfeiture action *in rem*, pursuant to Supplemental Rule G(2)(d), a complaint must: "if the property is tangible, state its location when any seizure occurred and–if different–its location when the action is filed." Isabela Auto denies that the location was included in the complaint. The United States counters noting that it referenced the Defendants' location upon seizure in the complaint, as well as in the unsworn declaration, which stated that Defendants were found and seized in this District (San Juan, PR). (See Docket No. 19 at 7.) The United States argues that the "location" was established through the unsworn declaration which was incorporated to the complaint. The unsworn declaration clearly states that the CBP officer who inspected Defendants was assigned to the TST at the San Juan Seaport, the location where Defendants were imported. (See Docket No. 6-1 at 1.) The United States also avers that the location requirement is met through numerous documents, namely, the Entry/Immediate Delivery Form filed with CBP, and the Bill of Lading, which clearly shows the destination point is San Juan, PR. Id. The United States notes that it was Isabela Auto who filled out and filed these documents with the CBP and identified the port of entry. Isabela Auto knew of the information contained in these documents, which establish where Defendants were imported to and where they were seized.

Isabela Auto, as consignee of Defendants, knew where Defendants were imported to, namely, "the District of Customs at San Juan, Puerto Rico." (Docket No. 19-1 at 1.) In addition, the Bill of Lading states that the Destination Port was San Juan, Puerto Rico. More importantly, the Entry/Immediate Delivery document specifically states that: "If subject to intensive examination

11

**Civil No. 13-1776 (GAG)**

transfer to Island Storage from its pier location . . ." Id. These documents establish the location of Defendants upon seizure: the port of San Juan. Thus, Isabela Auto further knew where Defendants would be transported to in the event of seizure: Island Storage. Isabela Auto, however, argues that these documents were not found in the complaint and are outside of the pleadings; therefore, they cannot be considered to satisfy the "location" pleading standard of Supplemental Rule G(2)(d).

Moreover, Isabela Auto avers that so long as the unsworn declaration provides the location, it may not be considered a pleading. (Docket No. 17.) As discussed more thoroughly below, this argument nevertheless fails. Fed. R. Civ. P. 10 clearly states that a "copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Further, certain written instruments attached to pleadings may be considered part of the pleading, pursuant to Fed. R. Civ. P. 10(c). McCallion v. Lane, 937 F.2d 694, 696 (1st Cir. 1991) (noting that pursuant to Fed.R.Civ.P. 10(c), exhibits are to be treated as "a part [of the pleading] for all purposes"). Therefore, the unsworn declaration was incorporated into the complaint as a pleading and it met the requirement of stating the location of Defendants "when any seizure occurred": the port of San Juan. See SUPP. R. FOR CERTAIN ADM. MAR. CLAIMS R. G(2)(d).

Isabela Auto, nevertheless, asserts that "the location of the property is relevant to issue process and for purposes of venue" and insists that the location of the property at the time of seizure does not comply with the Title 28 provisions above. These rules, however, deal with "where" a civil forfeiture proceeding may be brought, prosecuted, or caused to be served. None of them deal with the "location" pleading requirements. This court has jurisdiction and is the appropriate venue for this action because the property was imported to Puerto Rico through the Port of San Juan. Isabela Auto does not elaborate further as to why the complaint fails to meet the venue requirements or why the court does not have jurisdiction over Defendants, only that the "location" requirement was not met. (See Docket No. 17 at 4.)

The United States counters asserting that the court has *in rem* jurisdiction over Defendants and venue is proper pursuant to 28 U.S.C. § 1355(b)(1)(A) (acts and omissions giving rise to the forfeiture occurred in this district) and 28 U.S.C. § 1355(b)(1)(B) (any district where such property

**Civil No. 13-1776 (GAG)**

is found). (See Docket No. 19 at 7.) The court agrees. The court has *in rem* jurisdiction pursuant to section 1355(b)(1)(A) because the acts and omissions that give rise to the forfeiture, namely, the alleged illegal importation of Defendants, occurred in this district. The court further has *in rem* jurisdiction pursuant to section 1355(b)(1)(B) because the seized property is found in this district. In addition, venue is proper pursuant to section 1355(b)(1)(A) because it is in "the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred."

Finally, Isabela Auto argues, for the first time in its reply, that San Juan is not a "location" because a "location is a place where something is or could be located: a site." (Docket No 22 at 6.) Instead, it argues that San Juan is a municipality and a "location" is more geographically precise than a city or municipality; thus, the United States did not meet the "location" standard of Supplemental Rule G(2)(d). Isabela Auto nevertheless failed to point the court to any legal authority or case law supporting its contention that municipalities, such as San Juan, are invalid "locations" in this context. Moreover, the United States more specifically identified the location of Defendants upon seizure as the San Juan Seaport. Hence, Isabela Auto's argument as to the United States's failure to meet the "location" requirement of Supplemental Rule G(2)(d) also fails.

D.     <u>Failure to Comply with the Supplemental Rule G(2)(f) Heightened Pleading Standard</u>

Lastly, Isabela Auto argues that the complaint at issue does not "sufficiently" detail or state the facts to support its claims at trial under Supplemental Rule G(2)(f) and that it failed to state factual or conclusory allegations to survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss. It posits that "there are no factual allegations in the government's complaint at all." (Docket No. 17 at 6.) Further, Isabela Auto avers that the United States's unsworn declaration may not be considered a pleading and may not be incorporated by reference to the complaint because it does not meet the pleading standard of Fed. R. Civ. P. 10. (Docket No. 17 at 6-8.) The United States in turn argues that the unsworn declaration was incorporated to the complaint thus may be considered a part of the pleading, but Isabela Auto avers that the Federal Rules of Civil Procedure do not allow for such incorporation by reference. Furthermore, Isabela Auto argues that the United States demonstrated the unsworn declaration is not a pleading because it filed a motion to submit unsworn declaration

13

**Civil No. 13-1776 (GAG)**

instead of an amended complaint. Id. at 8. For said reasons, Isabela Auto argues that the complaint does not state a claim upon which relief may be granted; thus, dismissal is warranted.

The United States submits that the complaint fully complied with the required standard. It reasons that the unsworn declaration may indeed be incorporated by reference into the complaint. ( Docket No. 19 at 10.) The United States contends it has to establish the facts that support a viable case and the complaint sufficiently establishes that following the conclusion of discovery, it is plausible that it will meet its burden of proof. (See Docket No. 19 at 10.) See U.S. v. $74,500 in U.S. Currency, No. RBD-10-3380, 2011 WL 2712604, at *2 (D. Md. July 11, 2011). Also, the United States maintains that the complaint and the unsworn declaration comply with Supplemental Rule G(2)(d) & (f) because they reasonably establish the basis for forfeiture. (See Docket No. 19 at 11.) Finally, the United States argues that forfeitability is determined at the time of trial and that Title 18 Section 983(a)(3)(D), affirms such contention, providing that: "No complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property." 18 U.S.C. § 983(a)(3)(D). (See also Docket No. 19 at 11.)

At the pleading stage, "there is no requirement that all of the facts and evidence at the government's disposal be pled in the complaint; the government must simply plead enough specific facts for the claimant to understand the government's theory . . . and undertake her own investigation." Id; see United States v. All Funds on Deposit in Dime Sav. Bank of Williamsburg Account, No. 58-400738-1, 255 F. Supp. 2d 56, 69 (E.D.N.Y. 2003). Before adopting Supplemental Rule G, Supplemental Rule E(2)(a) ruled over the sufficiency of civil forfeiture actions. It required that the complaint "shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." See also 18 U.S.C. § 983(a)(3)(A). The First Circuit explained, however, that "the complaint need not allege facts sufficient to support a reasonable belief that specific property is tainted, but facts sufficient to support a reasonable belief that the government could demonstrate probable cause for finding the

14

**Civil No. 13-1776 (GAG)**

property tainted." United States v. TWP 17 R 4, Certain Real Prop. in Maine, 970 F.2d 984, 987 (1st Cir. 1992); see also One Parcel, 921 F.2d at 376. Pursuant to Supplemental Rule G(8)(b), which governs motions to dismiss in cases like the one at bar, a complaint is sufficient if it meets the "reasonable belief standard" under Supplemental Rule G(2)(f), which now governs the sufficiency of the complaint. It requires "sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Furthermore, Supplemental Rule G(8)(b)(ii) states: "In an action governed by 18 U.S.C. §983(a)(3)(D) the complaint may not be dismissed on the ground that the government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property." SUPP. R. FOR CERTAIN ADM. MAR. CLAIMS R. G(8)(b)(ii).

In addition to the allegations included in the complaint, "courts have examined supporting affidavits to determine whether they cure a lack of particularity in the complaint itself." United States v. 4492 S. Livonia Rd., 889 F.2d 1258, 1266 (2d Cir. 1989) (holding that an affidavit stating "the dates, circumstances, location and parties to the alleged drug transactions as well as the drugs and drug paraphernalia seized from the premises, cured any defect in the complaint") (citing United States v. Pole No. 3172, 852 F.2d 636, 639–40 (1st Cir.1988). Courts may consider attached affidavits incorporated into the forfeiture complaint. One Parcel, 921 F.2d at 376; see United States v. Parcels of Land, 903 F.2d 36 at 48 (1st Cir.1990) ("Whether the facts are contained in the complaint itself or in the attached affidavit would seem irrelevant to this inquiry [but] [w]e might decide differently if the affidavit were not attached to the complaint."); see also United States v. Premises & Real Property at 4492 South Livonia Rd., 889 F.2d 1258, 1266 (2d Cir.1989) (incorporated affidavit "adequately apprised [claimants] of the factual circumstances underlying the forfeiture action."). Thus, the pleading requirement may be satisfied by including the facts supporting a complaint via an agent's affidavit or unsworn declaration, as was done here.[4]

---

[4] The unsworn declaration complies with Supplemental Rule G(2) because it specifically lays out: (1) the inspection process; (2) the reason the Chief of the Import and Certification Division of the Office of Vehicle Safety

15

**Civil No. 13-1776 (GAG)**

The unsworn declaration was also incorporated into the complaint because, as discussed above, Fed. R. Civ. P. 10 states that a "copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." In a civil forfeiture case, certain written instruments attached to pleadings are considered part of the pleading for all purposes, pursuant to Fed. R. Civ. P. 10(c). McCallion, 937 F.2d at 696. Here, the unsworn declaration is a written instrument that was made part of the verified complaint as an exhibit to support the United States's forfeiture complaint. Paragraph seven of the complaint reads: "The facts and circumstances supporting the seizure and forfeiture of the defendant property are contained in the Title 28, United States Code, Section 1746 unsworn declaration of the Department of Homeland Security Investigations, United States Customs and Border Protection Officer, Marie Arlene Debién attached hereto, and incorporated herein as if fully stated." (Docket No. 1 at 3.)

There can be no doubt that the forfeiture complaint at issue is sufficient. The CBP agent's unsworn affidavit was expressly made part of the complaint and it alleges facts and circumstances sufficient to support a reasonable belief that the United States, at trial, can make a probable cause showing that most, if not all, of the Defendant property was imported to Puerto Rico in violation of federal law. One Parcel, 921 F.2d at 376. The CBP agent's unsworn declaration set forth the factual basis from which the seizure and forfeiture of Defendants arose. Further, the facts alleged were sufficient to put potential claimants on notice of the United States's theory, and provide them with enough information so they could investigate and frame a responsive pleading. See United States v. TWP 17 R 4, Certain Real Prop. in Maine, 970 F.2d 984, 987 (1st Cir. 1992). In sum, the factual allegations contained in the unsworn declaration suffice to support the United States's complaint for forfeiture *in rem* and put claimants on notice of the pending action. Therefore, the United States complied with the heightened pleading standard of Supplemental Rule G(2)(f).

---

Compliance of the DOT was involved in the inspection; (3) what the inspection revealed; (4) the specific violations of the DOT and the FMVSS; and (5) why the vehicles were then seized and forfeited. (See Docket No. 6-1.) That the unsworn declaration was first filed in error and later correctly re-filed is inconsequential.

16

**Civil No. 13-1776 (GAG)**

**IV. Conclusion**

For the foregoing reasons, Isabela Auto's Motion to Dismiss at Docket No. 17 is **DENIED**.

**SO ORDERED.**

In San Juan, Puerto Rico this 4th day of September, 2014.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge